UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-254-RJC
(3:15-cr-198-RJC-DSC-1)

| | |
|---|---|
| JASON OBRIAN NICHOLS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

**I.     BACKGROUND**

Petitioner Jason O. Nichols was involved in a drug-trafficking conspiracy. (Crim. Case No. 3:15-cr-198-RJC-DSC-1, Doc. No. 17 at ¶ 7: PSR). In September 2014, law enforcement officers responded to a civil disturbance at a Gaston County residence. (Id. at ¶ 6). Petitioner was at that location, standing near a maroon Ford Expedition. (Id.). He consented to allow the officers to search him. (Id.). However, when an officer walked close to a purple Crown Royal liquor bag near where Petitioner had been standing, Petitioner ran away, dropping a brown bag containing synthetic marijuana as he fled. (Id.).

Officers apprehended and arrested him. (Id.). When the officers returned to the Expedition and Petitioner saw the Crown Royal bag, he stated, "I'm not claiming that." (Id.). Officers then opened the bag and found 83 grams of crack cocaine, small plastic baggies, a razor blade, and a digital scale. (Id.). Petitioner consented to allow officers to search the Expedition. (Id.). Inside the Expedition, the officers found another bag containing synthetic marijuana,

1

$1,244 in cash, and another Crown Royal bag. (Id.). Multiple cooperating defendants incriminated Petitioner in the drug-trafficking conspiracy. (Id.). Based on information from the cooperators and the amount of drugs seized during this encounter, the amount of cocaine base that was known or reasonable foreseeable to Petitioner was between 280 and 840 grams. (Id.).

At the end of September 2014, the Government sent Petitioner a target letter informing Petitioner that the Government had received information that he had violated the Controlled Substances Act and was preparing to name him in an indictment.[1] (Doc. No. 3-1: Target Ltr., Gov. Ex. 1). The Government offered Petitioner a chance to discuss the matter, noting that this could lead to a more favorable disposition if the discussions were conducted before indictment. (Id.). The Government extended an invitation for Petitioner to appear personally before the grand jury and advised him that if he wanted to receive court-appointed counsel, he should provide a copy of the letter and a financial affidavit to the Federal Defender's Office. (Id.).

Although Petitioner originally was represented by another attorney, when that attorney stopped practicing law, attorney Roderick M. Wright, Jr., was appointed to represent Petitioner. (Id., Doc. No. 31 at 6; Doc. No. 30 at 2; Doc. Entry dated Sept. 16, 2015). A year later, the Government charged Petitioner in a Bill of Information with one count of conspiracy to distribute and to possess with intent to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. (Id., Doc. No. 1: Information). The Government also filed an information pursuant to 21 U.S.C. § 851, noticing Petitioner's prior conviction for manufacturing cocaine. (Id., Doc. No. 2: Section 851 Notice). Four days after the Bill of

---

[1] Although the letter was sent or delivered to Petitioner and includes his name on it, the salutation line mistakenly refers to a different person.

Information was filed, a factual basis and plea agreement were filed. (Id., Doc. Nos. 3-4: Factual Basis, Plea Agreement).

As part of the plea agreement, Petitioner agreed to plead guilty to the charge of conspiracy to distribute and to possess with intent to distribute 280 grams or more of cocaine base. (Id., Doc. No. 4 at ¶ 1). In exchange, the Government agreed to withdraw the § 851 Information, which reduced Petitioner's mandatory-minimum sentence from 20 years to 10 years, and to make charging concessions. (Id. at ¶¶ 2, 4). The parties agreed to recommend that the amount of cocaine base known or reasonably foreseeable to Petitioner was more than 280 grams, but less than 840 grams, and that a base offense level of 30 applied. (Id. at ¶ 7). The Government agreed that Petitioner's plea was timely for purposes of acceptance of responsibility and that it would not oppose a sentence at the bottom of the guideline range. (Id.).

Petitioner agreed that he had read, understood, and agreed with the factual basis and that the Court could use the factual basis to determine his sentence. (Id. at ¶ 14). He conceded that the failure to comply with any provision in the plea agreement would relieve the Government of its obligations under the agreement and could constitute the failure to accept responsibility and allow the Government to proceed on any dismissed, pending, superseding, or additional charges, but would not relieve Petitioner of his obligations or allow him to withdraw his plea. (Id. at ¶ 3). Petitioner also waived the right to withdraw his plea once it was accepted by the magistrate judge, as well as the right to challenge his conviction and sentence on direct appeal or in any post-conviction proceeding, except as to claims of ineffective assistance or prosecutorial misconduct. (Id. at ¶¶ 15, 18-19).

The magistrate judge conducted the initial appearance and the plea hearing sequentially. (Id., Doc. No. 30: Plea Tr.). Petitioner agreed to waive his right to a grand jury and to proceed

3

by criminal information. (Id. at 3-4; Doc. No. 8: Waiver of Indictment). At the plea hearing, Petitioner affirmed that he had received a copy of the information and had reviewed it with his attorney. (Id., Doc. No. 30 at 5). Petitioner affirmed that he understood that he had "a right to plead not guilty, to have a speedy trial before a judge and jury, to summon witnesses to testify in [his] behalf, and to confront the witnesses against [him]." (Id. at 7-8). He also affirmed that if he proceeded to trial, "[he] would be entitled to the assistance of a lawyer, [he] would not be required to testify, [he] would be presumed innocent, and the burden would be on the government to prove [his] guilt beyond a reasonable doubt." (Id. at 8). Additionally, Petitioner testified that he understood that he was giving up those rights by pleading guilty and that there would be no trial. (Id.).

The Government summarized the terms of the plea agreement, and Petitioner stated that he understood and agreed to those terms. (Id. at 8-12). Petitioner affirmed that he had read and agreed with the factual basis and that he was guilty of the offense. (Id. at 8, 12-13). He testified that no one had threatened, intimidated, or forced him to plead guilty and that, outside of the plea agreement, no one had made any promises of leniency or a light sentence to induce him to plead guilty. (Id. at 13). Petitioner told the magistrate judge that he had had sufficient time to discuss any possible defenses with his attorney and that he was satisfied with his attorney's services. (Id.). The magistrate judge accepted Petitioner's guilty plea, finding that it was knowingly and voluntarily made. (Id. at 14).

A probation officer prepared a presentence report, recommending that Petitioner be sentenced at a total offense level of 27 and a criminal history category of IV, for a guideline range of 100-125 months of imprisonment. (Id., Doc. No. 17 at ¶¶ 22, 42, 84). Due to the statutory mandatory minimum, the guideline range became 240 months of imprisonment. (Id. at

4

¶ 84). The PSR also indicated that a mandatory $100 special assessment applied. (Id. at ¶ 90). Petitioner objected to the PSR, arguing that he did not recall two of his prior convictions and that the statutory mandatory minimum sentence should be 10 years based on the agreement of the Government to withdraw the § 851 information. (Id., Doc. No. 17 at 19-20: PSR addnm). Defense counsel also submitted a sentencing memorandum, seeking a sentence at the bottom of the guideline range and noting that Petitioner had obtained his GED. (Id., Doc. No. 22: Sealed Sent. Memo.).

At the sentencing hearing, this Court reviewed the guilty-plea hearing conducted by the magistrate judge. (Id., Doc. No. 31 at 2: Sent. Hrg. Tr.). Without any objection from either party, the Court adopted the magistrate judge's finding that Petitioner's "plea was knowingly and voluntarily made." (Id.). Petitioner stated that he had reviewed the PSR with his attorney and understood it. (Id. at 2-3). This Court overruled Petitioner's objection to the prior convictions, noted that the Government had withdrawn the § 851 notice, and found that the guideline range was 120-125 months. (Id. at 3-4). Defense counsel argued for the mandatory minimum sentence, noting that Petitioner had obtained his GED and several certificates while incarcerated and that he had a strong support system. (Id. at 4-7). Counsel noted that Petitioner was frustrated that he could not reach a deal based solely on the quantity of drugs that were seized, which would have lowered his offense level. (Id. at 6). This Court imposed the mandatory minimum sentence of 120 months of imprisonment, a five-year term of supervised release, and ordered Petitioner to pay a $100 special assessment. (Id. at 9-11).

Petitioner timely appealed. Attorney Craig W. Sampson represented him on appeal. (Id., Doc. No. 28). Petitioner argued that the Rule 11 proceeding was deficient, citing the failure to advise him of the special assessment or to inform Petitioner that he had the affirmative right to

testify and to present evidence. (Id., Doc. No. 14: Appellant's Br., United States v. Nichols, No. 16-4539 (4th Cir. Nov. 23, 2016)). He asserted that trial counsel had provided ineffective assistance by not objecting to these deficiencies and by not recognizing that they could nullify his guilty plea. (Id.).

The Government moved to dismiss Petitioner's appeal, arguing that he waived any challenge to the plea colloquy that did not affect the knowing and voluntary nature of his plea and that the record did not conclusively show ineffective assistance. (Id., Doc. No. 22: Appellee's Br., United States v. Nichols, No. 16-4539 (4th Cir. 2017)). The Fourth Circuit granted the motion to dismiss, holding that Petitioner's challenge to "minor omissions in his Rule 11 hearing" fell squarely within the scope of his waiver and that his claim of ineffective assistance of counsel was not cognizable on direct appeal. (Id., Doc. No. 27: Order, United States v. Nichols, No. 16-4539 (4th Cir. 2017)).

Petitioner timely filed the present motion to vacate in May 2018, arguing that he received ineffective assistance of counsel because his trial counsel: (1) misrepresented the fact that he was implicated in a federal drug conspiracy and caused him to incriminate himself; (2) concealed evidence of actual innocence to coerce him into pleading guilty; and (3) failed to object to deficiencies in the Rule 11 proceeding. (Doc. No. 1 at 4-7). Petitioner also contends that he received ineffective assistance on appeal. (Id. at 8). The Government filed a response on August 20, 2018. (Doc. No. 3).

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the

claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

#### A. Petitioner's Claims of Ineffective Assistance of Counsel.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007)

7

(quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

**1. Petitioner's claim that counsel was ineffective because he coerced Petitioner into incriminating himself based on a false target letter.**

Petitioner first argues that his attorney provided ineffective assistance by coercing him to either incriminate himself or to assist the Government through falsely representing that Petitioner was implicated in a drug conspiracy. (Doc. No. 1 at 4). According to Petitioner, he received a target letter from someone who represented himself as an FBI agent, and the target letter contained defense counsel's name and telephone number. (Id.). Petitioner asserts that he signed the factual basis due to the target letter. (Id.).

Petitioner's argument is conclusory and factually incorrect. As noted, the Government sent Petitioner a target letter explaining that he had been implicated in violating the Controlled Substances Act and that the Government was preparing to indict him. His suggestion that the target letter was not real or that he had not been implicated in a drug offense is baseless. Although the target letter advised Petitioner on how to apply for the appointment of counsel, even if the letter had contained a specific attorney's name, Petitioner makes no showing that this somehow deprived him of effective assistance of counsel. Furthermore, his contention that he was coerced into signing the factual basis or pleading guilty contradicts his sworn testimony at

8

the plea hearing that he was pleading guilty voluntarily.  See (Id., Doc. No. 30 at 8, 12-13: Plea Tr.).  Accordingly, this claim of ineffective assistance will be dismissed.

**2. Petitioner's claim that counsel was ineffective by coercing Petitioner into pleading guilty.**

Petitioner next asserts that counsel concealed discovery material that would have shown his actual innocence of the offense and coerced and threatened him to plead guilty.  (Doc. No. 1 at 5).  He argues that this Court did not have jurisdiction over the case because he signed the factual basis and plea agreement before the Bill of Information was filed.  (Id.).  He also contends that his admission to the crime before the filing of the information is evidence that defense counsel involuntarily caused him to incriminate himself.  (Id. at 5-6).

Petitioner's assertion that counsel concealed discovery evidence that would have shown his actual innocence will be dismissed as conclusory.  See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations).  Petitioner offers no evidence of his actual innocence, nor does he allege what specific evidence counsel allegedly concealed.  Again, his contention that his guilty plea was coerced is belied by his testimony at the plea hearing.  See (Crim. Case No. 3:15-cr-198-RJC-DSC-1, Doc. No. 30 at 13).  Although Petitioner signed the plea agreement and factual basis before the filing of the Bill of Information, the plea agreement and factual basis were not filed with this Court until after the Bill of Information was filed.  Petitioner's attempt to equate this timing with some nefarious motive by counsel to get him to incriminate himself is unsupported.  Rather, the record shows that counsel negotiated a more favorable resolution of the case based on the plea agreement, which reduced Petitioner's mandatory minimum sentence

9

from 20 to 10 years and included other charging concessions, than if Petitioner had proceeded to indictment or trial. Accordingly, this claim of ineffective assistance will be dismissed.

**3. Petitioner's claim that counsel was ineffective for failure to challenge minor issues in the plea hearing.**

Petitioner next argues that his trial counsel should have objected to deficiencies in the Rule 11 hearing, arguing that the magistrate judge failed to advise him of the special assessment or of his right to testify and present evidence. (Doc. No. 1 at 7). He contends that counsel should have recognized that these deficiencies rendered his plea agreement null and void. (Id.).

Any omission to challenge Petitioner's guilty plea was objectively reasonable. Petitioner benefitted significantly from his guilty plea, including the reduction by half of the mandatory minimum sentence to which he was exposed. If Petitioner had declined to plead guilty or had attempted to withdraw his plea, he would have lost this benefit. Strong evidence, including that from multiple cooperating defendants and the crack cocaine found during the search, established Petitioner's guilt. Petitioner's attorney, therefore, acted prudently in his client's interests to the extent that he did not challenge Petitioner's guilty plea. Thus, Petitioner has not shown attorney "incompetence under prevailing professional norms." See Harrington v. Richter, 562 U.S. 86, 105 (2011).

Similarly, Petitioner cannot show prejudice from counsel's failure to challenge the "minor omissions" in his Rule 11 hearing. Petitioner testified under oath that he was guilty of the offense, so he had little reason to proceed to trial to exercise his right to testify. He also elected to plead guilty after the magistrate judge informed him that doing so would subject him to a maximum fine of $10 million. Thus, there is no evidence that hearing more about a $100 special assessment would have prompted Petitioner to relinquish the benefits of his plea

agreement. Petitioner has not shown that it would have been objectively reasonable for him to proceed to trial if counsel had objected to the Rule 11 omissions, which the magistrate judge could then have corrected, or if counsel had moved to withdraw his guilty plea, nor has he pointed to any contemporaneous evidence that he did not want to plead guilty. Accordingly, this claim of ineffective assistance will be dismissed.

**4. Petitioner's claim of ineffective assistance of appellate counsel.**

As Petitioner's final claim, he alleges that he received ineffective assistance of appellate counsel. In evaluating claims of ineffective assistance on appeal, courts consider whether "ignored issues are clearly stronger than those presented." Smith v. Robbins, 528 U.S. 259, 288 (2000) (internal citation and quotation omitted). Appellate counsel is not required to assert all non-frivolous issues on appeal. Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985). Rather, "it is the hallmark of effective appellate advocacy" to winnow out weaker arguments and to focus on more promising issues. Smith v. Murray, 477 U.S. 527, 536 (1986). Thus, "[a] decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). Additionally, the petitioner still bears the burden to show that there is a reasonable probability that but for counsel's failure to raise an issue on appeal, the result of the proceeding would have been different, i.e., he would have prevailed on appeal. See Robbins, 528 U.S. at 285-86.

Petitioner asserts that his appellate counsel provided ineffective assistance by not setting forth a certificate of questions for review, by presenting post-conviction facts, and by "threatening" to withdraw as counsel if Petitioner wanted to file a petition for writ of certiorari. (Doc. No. 1 at 8). None of these allegations go to the substance of Petitioner's appeal or show deficient performance or prejudice. Additionally, counsel was appointed for purposes of

Petitioner's direct appeal and had a duty not to raise frivolous issues, so informing Petitioner that counsel would not represent him in filing a petition for a writ of certiorari to the Supreme Court was not a threat and had no impact on Petitioner's appeal. Because Petitioner has not shown that appellate counsel provided ineffective assistance, this final claim is denied. See Strickland, 466 U.S. at 687-88, 694.

### IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: September 5, 2018

Robert J. Conrad, Jr.
United States District Judge